IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| BROADCAST MUSIC, INC.; ) <br> et al., ) <br> ) <br>    Plaintiffs, ) <br> ) <br>    v. ) <br> ) <br> BAMA LANES, INC. d/b/a The ) <br> Blue Iguana Bar & Grill; ) <br> and STEVEN LANDER and TERRI ) <br> LANDER, each individually, ) <br> ) <br>    Defendants. ) | CIVIL ACTION NO. <br> 2:13cv195-MHT <br> (WO) |

OPINION

Plaintiff Broadcast Music, Inc., a copyright licenser, along with several copyright owners listed below, filed this lawsuit against defendants Bama Lanes, Inc., Steven Lander, and Terri Lander asserting copyright infringement, in violation of the Copyright Act, 17 U.S.C. §§ 101-1332. Specifically, they alleged that The Blue Iguana Bar and Grill, an establishment owned and operated by the

defendants, played the following songs without permission from BMI or the copyright owners:

| Recording Title | Copyright Owner |
| --- | --- |
| All My Rowdy Friends (Have Settled Down) | Bocephus Music, Inc. |
| Californication | Moebetoblame Music |
| Harper Valley P.T.A. | Unichappell Music, Inc. |
| Monsters Mash | Capizzi Music Co.; Gary S. Paxton Publications, Inc.; and Dimensional Music Publishing LLC |
| Nothin' But a Good Time | Cyanide Publishing |
| Seven Bridges Road | Rondor Music International |
| Sympathy for the Devil | Abkco Music, Inc. |
| Landing in London | Songs of Universal, Inc.; and Escatawpa Songs |
| Dirt Road Anthem | Warner-Tamerlane Publishing Corp.; Average Joes Entertainment Group; and Brantley Keith Gilbert |
| In Color | EMI Blackwood Music Inc.; Warner-Tamerlane Publishing Corp.; Cory J. Glerman; Lee Thomas Miller; Sea Gayle Music LLC; James Allen Otto; and Jamey Van Johnson |

Each of these owners has granted BMI the right to publicly perform these compositions, to issue public performance license agreements, and to maintain actions and seek damages for infringement.

The plaintiffs' filings reveal that BMI contacted Steven Lander and Chris Zinn, a Bama Lanes employee, repeatedly for almost two years prior to filing this lawsuit.  In each letter, BMI notified the defendants of their obligations under copyright law and provided a means to bring The Blue Iguana into compliance with the law.  BMI offers 'blanket license agreements' which allow a business to pay a flat fee in exchange for the right to play any of the works in BMI repertoire.  On February 5, 2013, BMI estimated that a blanket license agreement for a bar the size of The Blue Iguana would have cost $ 7,595 for the two-year period starting March 1, 2011.[*]  In light of the defendants' non-participation in this lawsuit, the court

---

[*]In an earlier letter, BMI quoted a license fee of $ 8,100 for the year.  However, since the later quote was provided after an investigator visited The Blue Iguana and saw the size of the venue, the court will adopt that estimated loss to BMI.

3

has every reason to believe that they still have not purchased a license for The Blue Iguana.

The plaintiffs seek damages of $ 3,000 for each of the ten infringements alleged in the complaint, for a total of $ 30,000.  17 U.S.C. § 504(a) provides that "an infringer of copyright is liable for ... (2) statutory damages, as provided by subsection (c)." Subsection (c)(1) of § 504, in turn, provides that "the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work ... in a sum of not less than $ 750 or more than $ 30,000 as the court considers just."

In determining a just-damage award, "the court must award an amount that will put the defendant on notice that it costs more to violate the copyright law than to obey it." <u>Dream Dealers Music v. Parker</u>, 924 F.Supp. 1146, 1153 (S.D. Ala. 1996) (Vollmer, J.).  The $ 3,000 in per song damages that BMI seeks is at the low end of the statutory

4

damages range. Furthermore, the court estimates that licensing fees from March 2011 through the date of this opinion would have cost the defendants approximately $ 10,000. BMI's requested $ 30,000 in total damages is approximately three times that amount of licensing fees, a multiplier which several courts have applied as an appropriate sanction. See Broadcast Music, Inc. v. Entertainment Complex, Inc., 198 F. Supp. 2d 1291, 1296 (N.D. Ala. 2002) (Buttram, J.), and cases cited. Therefore, the court finds that $ 30,000 is an appropriate award in this case.

The plaintiffs also seek an injunction pursuant to 17 U.S.C. § 502. Section 502(a) specifically authorizes this court to "grant final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." As far as the court can tell, the defendants will not stop playing the plaintiffs' music at The Blue Iguana absent judicial intervention. Therefore, the court will issue an injunction prohibiting the defendants from

directly or indirectly infringing on the plaintiffs' copyright rights.

Finally, the plaintiffs seek attorney's fees and costs, pursuant to 17 U.S.C. § 505. Under § 505, "attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994). "In this circuit, the reasonableness of the attorneys' fee award is controlled by consideration of the Johnson [v. Georgia Hwy. Exp., Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)] factors." Cable/Home Commc'ns Corp. V. Network Prod., Inc., 902 F.2d 829, 853 (11th Cir. 1990); see also Montgomery v. Noga, 168 F.3d 1282, 1303 (11th Cir. 1999). These factors are:

> "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the

6

>            attorneys; (10) the 'undesirability' of
>            the case; (11) the nature and length of
>            the professional relationship with the
>            client; and (12) awards in similar
>            cases."

Johnson, 488 F.2d at 717-19. "The fee applicant bears the burden of 'establishing entitlement and documenting the appropriate hours and hourly rates.'" Simpleville Music v. Mizell, 511 F. Supp. 2d 1158, 1162 (M.D. Ala. 2007) (Thompson, J.).

The plaintiffs seek fees for the work of two attorneys and a paralegal. For James P. Pewitt, a partner with over 20 years of experience, they seek fees for .6 hours of work at a rate of $ 290 per hour. For Don B. Long, a fourth-year associate, they seek fees for 6.4 hours of work at a rate of $ 190 per hour. For Lisa Drake, a senior paralegal, they seek fees for 6.3 hours of work at a rate of $ 150 per hour.

"To determine whether the hourly rate submitted by the plaintiffs' attorneys is reasonable, the court will consider the customary fee and market rate for the attorneys, in addition to their experience, skill and

7

reputation." Id.  The rates proposed for Pewitt and Long fall within the range of fees that this court have found to be reasonable in previous cases.  See Adams v. City of Montgomery, 2013 WL 6065763 at *3 (M.D. Ala. 2013) (Thompson, J.), and cases cited.  However, Drake's requested rate is inflated.  "The rate of attorney's fees is that of the place where the case is filed." Cullens v. Georgia Dep't of Transp., 29 F.3d 1489, 1494 (11th Cir. 1994).  Although Drake's rate may be standard for an experienced paralegal in Birmingham, "Montgomery's legal rates are lower than Birmingham's." Adams at *3.  In previous copyright cases, this court has provided fees for paralegals at a rate of $ 100 per hour, and the court will follow that benchmark again here.  Simpleville Music, 511 F. Supp. 2d at 1163-64.

The court finds that the 7 attorney-hours and 6.3 paralegal-hours that plaintiffs' counsel spent on this case are reasonable.  As a result, the lodestar amount for the fee award is $ 2,020.  Reviewing the Johnson factors, the court does not find that an adjustment,

8

either upward or downward, is appropriate.  This is a straightforward copyright-infringement case, which was unopposed.  No complicated legal issues were raised and the fee award is  a small proportion of the damages award.  The court further finds that it is reasonable to award litigation costs of $ 56.64 for long distance calls and filing fees.  Therefore, the court awards attorneys' fees and expenses in the amount of $ 2,076.64.

A judgment will be entered in accordance with this opinion.

DONE, this the 12th day of December, 2013.

    /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE